# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:10cv172

| | | |
|---|---|---|
| SYNOVUS BANK, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATIONS** |
| JAMES  G. KARP, G. DANIEL SIEGEL, | ) | |
| THE KARP FAMILY FOUNDATION, | ) | |
| et al. | ) | |
| | ) | |
| | ) | |
|     Defendant. | ) | |
| _____ | ) | |

Pending before the Court is Plaintiff's Motion to Dismiss [# 31].  This consolidated action stems from the purchase of undeveloped lots in a real estate development in Cashiers, North Carolina called River Rock.  Defendants each purchased lots in River Rock.  Defendants financed the purchase of these lots by taking out loans with the National Bank of South Carolina.  After Defendants defaulted on the loans, Plaintiff Synovus Bank, as the successor in interest of The National Bank of South Carolina, filed collection actions against Defendants.  Defendants then asserted a number of counterclaims against Synovus Bank.  Synovus Bank moves to dismiss these counterclaims in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court **RECOMMENDS** that the District Court grant in part and deny in part Plaintiff's Motion to Dismiss.

# I.    Procedural Background

Synovus Bank is a Georgia corporation and the successor in interest through name change and by merger with The National Bank of South Carolina. (Karp Am. Counterclaim ¶¶ 1-2; Wall Am. Counterclaim ¶¶ 1, 3; Keary Am. Counterclaim ¶¶ 1-4; Hinkson Am. Counterclaim ¶ 2; Williams Am. Counterclaim ¶ 2; P. Tracy Am. Counterclaim ¶¶ 1, 4.) Synovus Bank initiated separate collection actions against Defendants James G. Karp, G. Daniel Siegel, and the Karp Family Limited Partnership (the "Karp Defendants"); Barron S. Wall; Kevin J. Tracy; Anthony J. Barbieri; Gerald Abatemarco and 3GMA Realty, LLC (the "Abatemarco Defendants"); Gregory S. Keary; Daniel S. Hinkson and Benjamin W. Atkinson (the "Hinkson Defendants"); Katherine H. Williams; and Patricia M. Tracy (collectively, the "Defendants") in the General Court of Justice for Buncombe County, North Carolina seeking the recovery of money it contends Defendants owe pursuant to various loan agreements the Defendants executed in order finance the purchase of lots at River Rock. Defendants then each removed the collection actions to this Court. After holding a hearing, the Court consolidated the cases for all pre-trial proceedings and allowed Defendants one final opportunity to amend their Answers and assert viable counterclaims. (Order, Dec. 10, 2010.) The Court also directed Synovus Bank to file a consolidated motion to dismiss the counterclaims and for Defendants to file

a consolidated response.

Consistent with the Court's prior Order, Defendants filed amended counterclaims. Although these counterclaims are based on the same general set of facts, the specific factual allegations and claims vary by defendant. The Karp Defendants, the Hinkson Defendants, Defendants Wall, Barbieri, K. Tracy, and Williams assert claims for violation of the North Carolina Deceptive Trade Practices Act, fraud, fraud in the inducement, violation of the Mortgage Lending Act, negligent misrepresentation, and two claims pursuant to the Interstate Land Sales Full Disclosure Act ("ILSA"). The Abatemarco Defendants and Defendants Keary and P. Tracy assert claims for violation of the North Carolina Deceptive Trade Practices Act, violation of the Mortgage Lending Act, negligent misrepresentation, and two claims pursuant to the ILSA.

Synovus Bank now moves to dismiss all of the counterclaims asserted by Defendants. Specifically, Synovus Bank contends that the claims are subject to dismissal because the counterclaims are not supported by plausible factual allegations and, therefore, fail as a matter of law. Put simply, Synovus Bank contends that the scheme alleged in the Amended Counterclaims is not plausible because the conduct runs contrary to Synovus Bank's business interests. In addition, Synovus Bank contends that Defendants' fraud and ILSA claims fail because they are not pled with

particularity as required by Rule 9 of the Federal Rules of Civil Procedure, that the ILSA claims fail because Synovus Bank is not a proper entity capable of being sued under the ILSA, that the statements forming the basis of Defendants' fraud claims are expressions of opinion and, thus, are not actionable in fraud, that the factual allegations do not support the counterclaims for negligent misrepresentations or unfair and deceptive trade practices because Synovus Bank owes no duty of care to Defendants, and that the North Carolina Mortgage Lending Act counterclaims fail because it has been repealed and does not apply to the loans Defendants secured from Synovus Bank.  Finally, Synovus Bank contends that Defendants P. Tracy, Gerald Abatemarco, and Karp each waived all counterclaims and defenses pursuant to a waiver contained in the documents they executed in association with securing the loans at issue.  In response to the Motion to Dismiss, Defendants agree to the dismissal of the counterclaims brought pursuant to the Mortgage Lending Act. (Defs.' Mem. Opp'n Mot. Dismiss at 7.)

## II.    Factual Background[1]

## A.    Defendants purchase lots at River Rock

River Rock is a subdivision in Cashiers, North Carolina that originally

---

[1] Where the factual allegations in the nine pleadings are substantially similar, the Court will cite only to the Amended Counterclaim of the Karp Defendants as (see e.g., Karp. Am. Counterclaim ¶__).  Where the allegations vary, the Court will cite to each Amended Counterclaim separately.

consisted of approximately 4000 acres of undeveloped land. (See e.g., Karp Am. Counterclaim ¶ 7.) Synovus Bank loaned approximately $12.5 million to third party Legasus of North Carolina, LLC ("Legasus") in order to purchase and develop River Rock. (See e.g., id. ¶¶ 8-11.) Each of the Defendants entered into a contract with Legasus to purchase a lot at River Rock. (See e.g., id. ¶ 13; Ex. 5-A to Pl.'s Mot. Dismiss.) The purchase price of the lots ranged from $239,900 to $550,000. (See App. 1 to Pl.'s Mot. Dismiss.)[2]

The Defendants financed the purchase of these lots by taking out loans with Synovus Bank for ninety percent of the purchase price of the lot. (See e.g., Karp Am. Counterclaim ¶ 38.)[3] The terms of the loans provided for interest only payments for a period ranging from one and one-half years to five years. (See e.g., id.; App. 1 to Pl.'s Mot. Dismiss.) As part of the agreement to purchase the lots, Legasus took Defendants' down payments for the lots and transferred the money to an account at Synovus Bank. (See e.g., Karp Am. Counterclaim ¶ 39.) Defendants then established an automatic payment mechanism so that these funds would cover the interest payments on the loan until the funds were depleted. (See e.g., id.)

_____

[2] In support of its Motion to Dismiss, Plaintiff attached an appendix consolidating the information contained in various financial documents contained in the record. For simplicity sake, the Court will cite to Appendix 1 rather than each of the individual documents from which this information is drawn.

[3] The one exception is Defendant Hinkson, who financed ninety-five percent of the lot's purchase price. (Hinkson Am. Counterclaim ¶ 22; App. 1 to Pl.'s Mot. Dismiss.)

Synovus Bank hired Marilyn Woods of Woods Appraisal Service to conduct the appraisal of the lots in connection with the loans. (See e.g., id. at ¶ 32.) Michael Wolf, a loan officer with Synovus Bank, hired Woods because he believed that she would provide an inflated value of the lots. (See e.g., id. at ¶ 33.) Defendants allege that Woods did in fact provide inflated appraisals to Synovus Bank. (See e.g., id. at ¶¶ 33-34, 36.) Specifically, Defendants allege that Woods failed to consider lots outside of River Rock as comparables and failed to take into account the lack of adequate infrastructure and utilities in the River Rock development. (See e.g., id. at ¶¶ 35-36.) Defendants also allege that Synovus Bank knew that these appraisals were inflated but used them to support the loans it provided Defendants to purchase the lots. (See e.g., id. at ¶ 36.) In addition, some of the Defendants contend that Synovus Bank failed to provide them with a copy of the appraisal prior to the closing date of the lots. (See e.g., Wall Am. Counterclaim at ¶¶ 41-43.)

### B. The Alleged Misrepresentations

In connection with the purchases of the lots, Defendants allege that Wolf made various misrepresentations regarding the value of the lots and the viability of River Rock development in general. These representations include statements by Wolfe that the  lots were an incredible investment (Karp Am. Counterclaim at ¶ 24), a good investment (K. Tracy Am. Counterclaim at ¶ 19), that Defendant Barbieri would make

money on the lot (Barbieri Am. Counterclaim at ¶ 22), River Rock was a viable development (Williams Am. Counterclaim at ¶ 30), that future buyers would be attracted to the fact that Phil Mickelson had agreed to "do a golf course at River Rock" (Id. at ¶ 31), and that Defendants would be able to sell or re-finance the lots before the money set aside by Legasus to pay the initial eighteen months of interest on the loan was depleted or prior to the expiration of the interest only portion of the loan (Karp Am. Counterclaim at ¶ 27; K. Tracy Am. Counterclaim at ¶ 24; Barbieri Am. Counterclaim at ¶ 21; Keary Am. Counterclaim at ¶ 27).

### C.   The Alleged Scheme to Defraud Defendants

Although the specific factual allegations related to the alleged fraudulent scheme varies slightly in each of the Amended Counterclaims, the general nature of the scheme remains constant throughout the nine Amended Counterclaims. Defendants allege that Synovus Bank fraudulently induced them to purchase lots at River Rock at an inflated price by structuring the loan so that the funds they used for the down payment on the lot was used to pay the interest payments on the loan during the first approximate eighteen months.  (See e.g., Karp. Am. Counterclaim ¶ 39.) Synovus Bank was able to inflate the price of the lot by using false appraisals from Woods.  (See e.g., id. ¶ 36.)  Synovus Bank knew that this practice was not sustainable long term but, nonetheless, persisted with its plan.  (See e.g., id. ¶ 40.)

In spite of knowing that this was not a sustainable business practice, Synovus Bank participated in a scheme designed to inflate the prices of the lots and issue loans to Defendants on property that it knew was worth only a fraction of the loans' value in order to maximize Synovus Banks's short term financial growth. (See e.g. Wall Am. Counterclaim ¶ 65.) Accordingly, Synovus Bank made loans that it knew posed a high level of long term risk to Synovus Bank "because it was attempting to grow rapidly by making loans that were of low quality and charging borrowers a premium yield." (Id. at ¶ 66.) Synovus Bank received guaranteed interest payments from Legasus at closing to bolster its short term growth. (See e.g., Wall Am. Counterclaim at ¶¶ 53, 58-59.) In total, Synovus Bank received approximately one million dollars over a two year period from the transfer of seller paid interest from Legasus to Synovus Bank upon the closing of approximately thirty loans tied to the purchase of lots at River Rock. (Id. at ¶¶62-63.) Synovus Bank also received a small loan origination fee. (Id. ¶¶ 54, 61.)

In short, Defendants contend that Synovus Bank undertook the risk associated with lending money to unqualified individuals to purchase property that Synovus Bank knew was overvalued and, in some cases, knew that the individual would not be able to make payments on the loan once the interest only period ended, in order to stimulate short term revenue. (Karp. Am. Counterclaim ¶ 70-1; Barbieri Am.

Counterclaim ¶ 21.)  By increasing short term revenue in this manner, Synovus Bank was able to increase its short term profitability on its financial statements.  (See e.g., K. Tracy Am. Counterclaim ¶¶ 45, 48.)  Synovus Bank disregarded the "substantial long term risk" to its business from this practice "because it believed that rapid real estate price appreciation would continue to occur in the short term and thus provide a market that would yield a third party purchaser to buy the Lot with funds from a third party lender or market conditions would allow the re-finance of the Lot with funds from a third party lender." (Id. at ¶ 49.)  This scheme came to a halt after the collapse of the real estate market and eventually resulted in the failure of the National Bank of South Carolina.  (See Wall Am. Counterclaim ¶¶ 74-79.)   This action ensued.[4]

## III.   Legal Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the counterclaims state a plausible claim for relief.  See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009).  In considering Plaintiff's motion, the Court accepts the allegations in the Amended Counterclaims as true and construes them in the light most

---

[4] In their Memorandum in Opposition to Motion to Dismiss, Defendants rely on a number of documents and factual allegations that were not contained in their Amended Counterclaims.  In addition, Defendants reference the factual allegations in other proceedings. None of these documents or allegations, however, are relevant to the question of whether the Amended Counterclaims state a claim for relief.  Going forward, the Court will strike any pleadings that contain such references.

favorable to the Defendants. <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 253 (4th Cir. 2009); <u>Giacomelli</u>, 588 F.3d at 190-92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." <u>Consumeraffairs.com</u>, 591 F.3d at 255; <u>see also</u> <u>Giacomelli</u>, 588 F.3d at 189.

The counterclaims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); <u>see also</u> <u>Consumeraffairs.com</u>, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. <u>Id.</u> Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. ____, 129 S. Ct. 1937, 1949 (2009).

The Amended Counterclaims are required to contain "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. at 1974; <u>see also</u> <u>Consumeraffairs.com</u>, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S.

____, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that the Plaintiff acted unlawfully is not sufficient for a counterclaim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move defendant's counterclaims from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

Where, a party's allegations sound in fraud, however, the allegations must also satisfy the heightened pleading standards of Rule 9. Cozzarelli v. Inspire Pharmaceuticals Inc., 549 F.3d 618, 629 (4th Cir. 2008); Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). Rule 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9 applies not only to claims asserting common law fraud, but to all claims where the allegations have the substance of fraud. Cozzarelli, 549 F.3d at 629. A claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim if it does not comply with Rule 9(b). Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir. 1999).


III.    Analysis

Synovus Bank moves to dismiss the Amended Counterclaims on a number of grounds. As a threshold matter, Synovus Bank contends that all of the Amended Counterclaims fail because the alleged scheme underlying each counterclaim is implausible as a matter of law. Synovus Bank also contends that the fraud, fraud in the inducement, and ISLA counterclaims fail because they fail to satisfy Rule 9(b)'s requirement that Defendants plead such counterclaims with particularity. Individually, Synovus Bank contends that the ILSA counterclaims fail because Synovus Bank is not a developer within the meaning of the ISLA; the fraud counterclaims fail because Defendants have alleged only expressions of opinions that cannot constitute fraud under North Carolina law; the unfair and deceptive trade practices counterclaims fail because Defendants have not alleged unfair or deceptive conduct on the part of Synovus Bank; and the negligent misrepresentation counterclaims fail because Synovus Bank owed no duty to Defendants. Finally, Synovus Bank contends that Defendants Patricia Tracy, Gerald Abatemarco, and James Karp each waived all counterclaims and defenses by executing loan documents containing a waiver.

## A.    Implausibility

As an initial matter, Synovus Bank contends that all of the counterclaims fail as a matter of law because the scheme underlying each of the counterclaims is so contrary to Synovus Bank's long term business interests as to be implausible as a

matter of law and, thus, fails to comply with the requirements of <u>Twombly</u> and <u>Iqbal</u>. In support of its position, Synovus Bank relies on three district court decisions, <u>Feeley v. Total Realty Mgmt.</u>, 60 F. Supp. 2d 700 (E.D. Va. 2009)[5], <u>Goldstein v. Bank of America</u>, No. 1:09cv329, 2010 WL 1252641 (W.D.N.C. Jan. 10, 2010) (Howell, Mag. J.); and <u>Bank of America v. Lykes</u>, No. 1:09cv435, 2010 WL 2640454 (W.D.N.C. May 20, 2010) (Howell, Mag. J.). Both <u>Goldstein</u> and <u>Lykes</u> held that the schemes alleged in the complaint and counterclaims at issue were implausible as a matter of law and recommended that the District Court dismiss the claims as such. <u>Goldstein</u>, 2010 WL 1252641, at *4-6; <u>Lykes</u>, 2010 WL 2640454, at *4-6. These cases, however, both suffered from the same flaw - a failure to plead specific factual allegations supporting the claims. <u>Goldstein</u>, 2010 WL 1252641, at *4-5; <u>Lykes</u>, 2010 WL 2640454, at *6.

Here, Defendants allege that Synovus Bank participated in a scheme to maximize short term revenue by lending money to unqualified individuals to purchase property that Synovus Bank knew was overvalued and, in some cases, knew that the individual would not be able to make payments on the loan once the interest only period ended. (Karp. Am. Counterclaim ¶ 70-1; Barbieri Am. Counterclaim ¶ 21.)

---

[5] The Court notes that some Courts have rejected the <u>Feeley</u> Court's interpretation of the plausibility standard as set forth in <u>Twombly</u> and <u>Iqbal</u>. <u>See</u> <u>e.g.</u>, <u>Dobyns v. U.S.</u>, 91 Fed. Cl. 412, 424-428 (Fed. Cl. 2010).

Defendants allege that by increasing short term revenue in this manner, Synovus Bank was able to increase its short term profitability on its financial statements. (See e.g. K. Tracy Am. Counterclaim ¶¶ 45, 48.) In short, Synovus Bank was willing to accept the long term risk associated with the loans because the structure of the loan guaranteed approximately 18 months of payments from the money provided by Legasus. Moreover, Synovus Bank disregarded the long term risk from this practice "because it believed that rapid real estate price appreciation would continue to occur in the short term and thus provide a market that would yield a third party purchaser to buy the Lot with funds from a third party lender or market conditions would allow the re-finance of the Lot with funds from a third party lender." (Id. at ¶ 49.)

Although the likelihood of Synovus Bank undertaking the actions alleged in the Amended Counterclaims may not be high due to the serious risk to its long term financial health, the Court cannot say, as a matter of law, that the factual allegations are so implausible that they should be disregarded, and the Court should dismiss the Amended Counterclaims in their entirety. Synovus Bank would not be the first corporation in the history of modern economics to undertake an action that carried substantial risk to its long term financial viability in order to increase short term profits or revenue. Twombly and Iqbal did not alter the age old requirements that the Court must accept the well-pled allegations in the Amended Counterclaims as true and

construe the counterclaims in the light most favorable to Defendants, including drawing all reasonably inferences in favor of the Defendant. See e.g., 5B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure, § 1357 (3d ed. 2007); Giacomelli, 588 F.3d at 190-92. Here, Defendants have pled sufficient factual allegations in the Amended Counterclaims to state a counterclaim that is plausible on its face. See Iqbal, 129 S. Ct. at 1949. To hold otherwise would be to expand the Supreme Court's holdings in Iqbal and Twombly beyond their intention, and absent guidance from the United States Court of Appeals for the Fourth Circuit or the United States Supreme Court, this Court is unwilling to do so. Put simply, it is not the role of the Court at the motion to dismiss stage to weigh the merits of the factual allegations in the Amended Counterclaims. Accordingly, the Court **RECOMMENDS** that the District Court deny the Motion to Dismiss to the extent it seeks to dismiss the Amended Counterclaims in their entirety for failure to plead claims that are plausible as a matter of law.

## B.     The ILSA

The ILSA "is designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers." Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla., 426 U.S.

776, 778, 96 S. Ct. 2430, 2433-34 (1976). The ILSA is based on the same notion of full disclosure that permeates the Securities Act of 1933. Id. "The Act also requires sellers to inform buyers, prior to purchase, of facts which would enable a reasonably prudent individual to make an informed decision about purchasing a piece of real property." Burns v. Duplin Land Dev., Inc., 621 F. Supp. 2d 292, 301 (E.D.N.C. 2009).

An individual who purchases a lot may bring a civil action under the ILSA against a "developer or agent" who violates Section 1703(a). 15 U.S.C. § 1709; Burns, 621 F. Supp. 2d at 301; Nahigian v. Juno Loudoun , LLC, 684 F. Supp. 2d 731, 742 (E.D. Va. 2010) ("A private cause of action arises under the Act only against a 'developer or agent'"). Section 1701 defines a "developer" as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision . . . ." 15 U.S.C. § 1501(5). The statute does not limit the definition of a developer to the original entity that subdivides undeveloped land and offers lots for sale. U.S. Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc., 64 F.3d 920, 925 (4th Cir. 1995); Olsen v. Lake Cnty. Inc., 955 F.2d 203, 205 (4th Cir. 1991). An "agent" is defined as "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision; but shall not include an attorney at law

whose representation of another person consists solely of rendering legal services . . . ." 15 U.S.C. § 1501(6).

Synovus Bank contends that the ILSA counterclaims are subject to dismissal because it is not a developer or agent within the meaning of the statute. As a general rule, lending institutions acting in the ordinary course of their business are not considered developers withing the meaning of the ILSA. See Cumberland Cap. Corp. v. Harris, 621 F.2d 246, 251 (6th Cir. 1980); Hammar v. Cost Control Mktg. and Sales Mgmt. of Va., Inc., 757 F. Supp. 698, 702 (W.D. Va. 1990); Kenneally v. Bank of Nova Scotia, 711 F. Supp. 2d 1174, 1191-92 (S.D. Cal. 2010) (collecting cases). "A bank . . . which merely finances the various lot sales and has no involvement in the development, marketing, or sale of the land unless foreclosure becomes necessary, is certainly acting in the ordinary course of business." Hammar, 757 F. Supp. at 702. A commercial bank such as Synovus Bank, however, may step outside of its ordinary role as a lending institution and be considered a developer under the ILSA where it directly or indirectly markets property for sale. See 15 U.S.C. § 1501(5); Cumberland, 621 F.2d at 251; Hammar, 757 F. Supp. at 702; Kenneally 711 F. Supp. 2d at 1192; Timmreck v. Munn, 433 F. Supp. 396 (N.D. Ill. 1977); Thompson v. Bank of America, No. 7:09cv89, 2011 WL 1253163, at *1 (E.D.N.C. Mar. 30, 2011). As the United States District Court for the Western District of Virginia explained in Hammar:

> When a financial institution allows its name to be used in advertisements or announcements for a development, it is in effect lending its prestige and good name to the sales effort. It is participating to an acceptable degree in the marketing of the project. It is has gone beyond its function as a commercial bank to lot purchasers.

757 F. Supp. at 702-3.

The factual allegations in the Amended Counterclaims fail to support a claim that Synovus Bank was so involved in advertising the lots for sale that it went beyond its function as a commercial bank and could be considered a developer under the ILSA. As a threshold matter, there are no allegations in the Amended Counterclaims that Synovus Bank's logo was contained on the advertising and promotion materials for River Rock. See Nahigian v. Juno Loudoun, LLC, 684 F. Supp. 2d 731, 747 (E.D. Va. 2010) (denying motion to dismiss because of the "near universal prevalence of the [defendant's] name and logo" and the numerous misrepresentations made by its employees.) Instead, Defendants rely on the fact that Michael Wolf, as an agent of Synovus Bank, "participated in off-site sales presentations to sell lots at the River Rock subdivision," including the Summer Sail event and the Grand Opening sales event. (See e.g., Williams Am. Counterclaim ¶ 23; Barbieri Am. Counterclaims ¶ 12.) The Amended Counterclaims, however, contain no factual allegations suggesting that his attendance as a loan officer at these events constituted the type of involvement by Synovus Bank in the sale, offer to sale, or advertising for sale of lots

such that Synovus Bank falls within the the ILSA's definition of a developer.  In fact, the Amended Counterclaims suggest that Wolf was only there to speak to  potential buyers about obtaining financing for the purchase of a lot.[6]  (See e.g.,  P. Tracy A. Counterclaim ¶¶ 19, 22.)

Moreover, the alleged statements made by  Wolf to Defendants that the lots were good investments and that Defendants could refinance or resell the lots prior to the maturity date of  the loan, made during the course of his dealings with Defendants as loan officer, are insufficient to hold Synovus Bank liable as a developer under the ILSA.  Finally, the lone allegation that Wolf stated to one of the Defendants that "the Bank was one of the major funders of the development of River Rock" is insufficient, at a matter of law, to constitute the type of activity by a lending institution for it to be considered a developer.  (Barbieri Am. Counterclaim ¶ 23.)  The allegations in the Amended Counterclaims are insufficient to demonstrate that Synovus Bank shed it role as an ordinary lending institution and actively participated in the advertisement for sale of the lots at River Rock.  Accordingly, the Court **RECOMMENDS** that the District Court grant the Motion to Dismiss as to the ILSA claims.

### C.    Fraud

The elements of fraud under North Carolina law are: (1) the false representation

---

[6]  The Court disregards the numerous conclusory allegations contained in the Amended Counterclaims.  See Consumeraffairs.com, 591 F.3d at 255.

or concealment of a material fact; (2) that is reasonably calculated to deceive; (3) is made with the intent to deceive; (4) does in fact deceive the plaintiff; and (5) damages that result from the false representation or concealment. Anderson v. Sara Lee Corp., 508 F.3d 181, 189 (4th Cir. 2007) (applying North Carolina law). In addition, a plaintiff must reasonably rely on the false representations. Id. Generally, a representation that is only a statement of one's opinion, cannot constitute a false representation for purposes of a fraud claim. Myrtle Apartments, Inc. v. Lumbermen's Mut. Cas. Co., 127 S.E.2d 759, 761 (N.C. 1962) (holding that an engineer's report recommending that a boiler be replaced after the heating season could not constitute fraud); Leftwich v. Gains, 521 S.E.2d 717, 722-23 (N.C. Ct. App. 1999); compare Meyers & Chapman, Inc. v. Thomas G. Evans, Inc., 374 S.E.2d 385, 389-90 (N.C. 1988) (holding that representation in statement from contractor that work had been completed and payment was due was not an opinion). "However, the general rule that no one is liable for an expression of opinion is not a hard and fast rule; . . . it does not apply to the dishonest expression of an opinion not actually entertained.'" Leftwich, 521 S.E.2d at 723 (quoting 37 C.J.S. *Fraud* § 13 (1997)). As the Court of Appeals in Leftwich explained, "a statement purporting to be opinion may be the basis for fraud if, at the time it is made, the maker of the statement holds an opinion contrary to the opinion he or she expresses, and the maker also intends to

deceive the listener." Id. (emphasis added); see also Olympus Managed Health Care, Inc. v. Am. Housecall Physicians, Inc., 662 F. Supp. 2d 427, 438(W.D.N.C. 2009) (Conrad, C.J.); Silicon Knights, Inc. v. Epic Games, Inc., No. 5:07cv275, 2011 WL 1134453, at *6 (E.D.N.C. Jan. 25, 2011) ("But a purported opinion or promissory representation may support a fraud claim if, at the time the statement is made, the speaker actually believes to the contrary and makes the statement with an intent to deceive the other party.").[7]

Defendants allege a number of false representations and omissions that Wolf made to them, which they contend were made with the intent to deceive. In addition, Defendants allege that they relied on these allegedly false representations to their detriment in deciding to purchase lots at River Rock. Moreover, the Amended Counterclaims specifically identify who made the statements, to whom they were made, and both the context and approximate time frame of the statements, satisfying the requirements of Rule 9(b). Even if these statements are expressions of opinions by Wolf, Defendants can still prevail if they can show that when Wolf made the statements, he held an opinion contrary to the opinion he expressed, and that he did

---

[7] Accordingly, Plaintiff's contention that all of the fraud claims fail because they are based solely on expressions of opinion is misplaced as North Carolina law specifically allows for fraud claims based on statements of opinion. See Olympus Managed Health Care, 662 F. Supp. 2d at 438; Leftwich, 521 S.E.2d at 723.

so with the intent to deceive Defendants into purchasing the lots.  See <u>Olympus</u> <u>Managed Health Care</u>, 662 F. Supp. 2d at 438; <u>Leftwich</u>, 521 S.E.2d at 723. Although Defendants will bear a heavy burden of demonstrating the ultimate viability of the fraud counterclaims, the Amended Counterclaims set forth a valid claim for fraud and are not subject to dismissal pursuant to Rule 12(b)(6).  The Court **RECOMMENDS** that the District Court deny the Motion to Dismiss as to the fraud claims.

### D.     Negligent Misrepresentation

Under North Carolina law, the tort of negligent misrepresentation requires that the plaintiff: (1) justifiably rely; (2) to plaintiff's detriment; (3) on information prepared without reasonable care; (4) by an individual owing the plaintiff a duty of care.  <u>Guyton v. FM Lending Servs, Inc.</u>, 681 S.E.2d 465, 478 (N.C. Ct. App. 2009); <u>Hospira</u>, 671 S.E.2d at 12; <u>see</u> <u>also</u> <u>Geo Plastics v. Beacon Dev. Co.</u>, No. 10-1656, 2011 WL 2213718, at *3 (4th Cir. Jun. 8, 2011) (applying North Carolina law) (unpublished).

Fatal to Defendants' counterclaim on this issue is the fact that the Amended Counterclaims fail to allege factual allegations supporting an essential element of a negligent misrepresentation claim - that Synovus Bank and Wolf owed Defendants a

duty of care related to the alleged misrepresentations.[8] The alleged misrepresentations in this case do not involve representations or omissions regarding the terms and conditions of the loans offered by Synovus Bank. Instead, Defendants allege that Wolf made numerous misrepresentations regarding the value of the lots, the progress of the development of River Rock, and potential for Defendants to re-sell the lots prior to the expiration of the loans. Under North Carolina law, however, the banker-customer or lender-debtor relationship generally does not give rise to a fiduciary relationship. See Branch Banking and Trust Co. v. Thompson, 418 S.E.2d 694, 699 (N.C. Ct. App. 1992) ("[P]arties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract and the duties set forth in the U.C.C."); Lassiter v. Bank of North Carolina, 551 S.E.2d 920, 922-23 (N.C. Ct. App. 2001); Camp v. Leonard, 515 S.E.2d 909, 913 (N.C. Ct. App. 1999) ("[A] lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party."); Wagner v. Branch Banking and Trust Co., 179 N.C. App. 436, 2006 WL 2528495, at *2 (N.C. Ct. App. 2006) (unpublished) ("[T]his court has acknowledged that a lender has a duty to perform those responsiblities specified in a loan agreement, but has declined to impose any duty beyond those expressly provided for in the agreement."). Moreover, the

---

[8] Defendants' conclusory allegations that the bank owed Defendants a duty are insufficient to survive a motion to dismiss. See Consumeraffairs.com, 591 F.3d at 255.

Amended Counterclaims fail to allege facts supporting any type of special relationship between Wolf and Defendants beyond that of the typical loan officer-customer that might give rise to a duty of care above and beyond that typical of the debtor-creditor or banker-customer relationship. See generally Thompson, 418 S.E.2d at 699 (recognizing that under the proper circumstances the bank-customer relationship could give rise to fiduciary relationship). Accordingly, the Court **RECOMMENDS** that the District Court grant the Motion to Dismiss as to the negligent misrepresentation claims.

### E. Unfair and Deceptive Trade Practices

In order to make out a *prima facie* counterclaim for unfair and deceptive trade practices, a defendant must show that: (1) the plaintiff committed an unfair or deceptive act or practice; (2) that this act or practice was in or affecting commerce; and (3) that the act or practice proximately caused the defendant's injury. Gray v. N.C. Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000); Hospira Inc. v. Alphagary Corp., 671 S.E.2d 7, 12 (N.C. Ct. App. 2009); Sessler v. March, 551 S.E.2d 160, 167 (N.C. Ct. App. 2001). A practice is unfair if it "'is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers.'" Branch Banking and Trust Co. v. Thompson, 418 S.E.2d 694, 699 (N.C. Ct. App. 1992) (quoting Johnson v. Phoenix Mut. Life Ins. Co., 266 S.E.2d 610, 621 (N.C. 1980)); Sessler, 551

S.E.2d at 167. A practice is deceptive where it has the tendency or capacity to deceive. Thompson, 418 S.E.2d at 699; Sessler, 551 S.E.2d at 167. "In making a claim of unfair and deceptive trade practices on a theory of misrepresentation or fraud, a plaintiff must show that a defendant's words or conduct possessed 'the tendency or capacity to mislead' or create the likelihood of deception.'" Hospira, 671 S.E.2d at 12 (quoting Marshall v. Miller, 276 S.E.2d 397, 403 (1981)). Moreover, a defendant does not have to show actual deception to prevail, he or she need only demonstrate that the acts of plaintiff "possessed the tendency or capacity to mislead or create the likelihood of deception." RD & J Props. v. Lauralea-Dilton Enters., LLC, 600 S.E.2d 492, 500-501 (N.C. Ct. App. 2004).

As a threshold matter, Plaintiff's contention that Defendants' unfair and deceptive trade practices counterclaims are subject to dismissal because a bank owes no duty of care to its customers is without merit. Unlike a claim for negligent misrepresentation, duty of care is not an element of a claim under N.C. Gen. Stat. § 75-1.1.[9] Moreover, the Amended Counterclaims contain numerous factual allegations

_____

[9] Plaintiff's reliance on Pappas v. NCNB Nat'l Bank, 653 F. Supp. 699 (M.D.N.C. 1987), is misplaced as the Court did not, as Plaintiff's contend, dismiss the unfair and deceptive trade practices claims "because . . . [the] bank owned no duty to borrowers regarding the alleged misrepresentation." (Pl.'s Reply Br. 17.) In fact, Pappas held that no affirmative misrepresentation even occurred. Pappas, 653 F. Supp. at 703-4. While the Court did hold that the bank was under no duty to correct the plaintiff's unilateral misunderstanding of the term "prime rate" as used by the bank, it did not dismiss the unfair and deceptive trade practices claim on this ground. Id. at 707.

supporting the unfair and deceptive trade practices counterclaims, including that Synovus Bank used false appraisals that they knew were inflated and that Wolf made several misrepresentations to Defendants regarding the value of the lots, the status of the River Rock development, and Defendants' ability to sell the lots prior to the expiration of the loans' terms. Accepting the factual allegations in the Amended Counterclaims as true, these alleged misrepresentations had the "capacity to mislead" potential purchasers like Defendants. See RD & J Props., 600 S.E.2d at 500-501. Accordingly, the Court **RECOMMENDS** that the District Court deny Plaintiff's Motion to Dismiss as to the unfair and deceptive trade practices counterclaims.

> ### F.     Waiver

Plaintiff contends that Defendants P. Tracy, Abatemarco, and Karp have waived all counterclaims and defenses against Synovus Bank because the documents they executed contain various releases. Defendant P. Tracy executed a Modification and Amendment of Note and Deed ("Modification") of Trust in January 2010. (Ex. 7-D to Pl.'s Mot. Dismiss.)   Pursuant to the express terms of the Modification, Defendant P. Tracey acknowledged that "Borrower has no defense to the enforcement of the Loan Documents" and that "Borrower acknowledges Lender's compliance with all terms, conditions and obligations of the Loan Documents to date and hereby releases Lender and any subsequent assignee or note holder of all liability thereunder."

(Id. at ¶ 5(b)-(c).)  In addition, the Modification contained the following language:

> Borrower releases and discharges Lender and Lender's agents, attorneys, employees and officers from any and all actions, caused of action, claims, demands or damages of any kind on account of or arising out of any event, action, omission or matter (whether known or unknown) occurring prior to the date of this Agreement, including but not limited to the negotiation, execution, delivery or performance of the Loan Documents, the administration of the Loan Documents, the negotiation and actions taken with respect to the defaults existing or occurring under the Loan Documents and the loan transactions evidenced by the Loan Documents.

(Id. at ¶ 6.)

Defendants Abatemarco and Karp signed Guaranties for Notes executed by 3GMA Realty and the Karp Family Partnership and Daniel Siegel.  (Ex. 1-B to Pl.'s Mot. Dismiss; Ex. 4-C to Pl.'s Mot. Dismiss.)   These Guaranties also contained identical releases, which provide:

> The Undersigned waives any and all defenses, claims and discharges of Borrower, or any other obligor pertaining to indebtedness, except the defense of discharge by payment in full.  Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available against Lender to Borrower or any such other person liable in respect of any indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction.

(Ex. 1-B at ¶ 7 to Pl.'s Mot. Dismiss; Ex. 4-C at ¶ 7 to Pl.'s Mot. Dismiss.)  Plaintiff

contends that the express language in these agreements bars the counterclaims asserted by Defendants P. Tracy, Abatemarco and Karp. Defendants do not contest the fact that these waivers encompass their counterclaims. Rather, they contend that the waivers are unenforceable because they are contrary to law and public policy.

In North Carolina, courts will enforce an exculpatory contract "unless it violates a statute, is gained through inequality of bargaining power, or is contrary to a substantial public interest." Fortson v. McLellan, 508 S.E.2d 549, 551 (N.C. Ct. App. 1998); see also Sylva Shops Ltd. P'ship v. Hibbard, 623 S.E.2d 785, 790 (N.C. Ct. App. 2006); Andrews v. Fitzgerald, 823 F. Supp. 356, 378 (M.D.N.C. 1993). "This principle arises out of 'the broad policy of the law which accords to contracting parties freedom to bind themselves as they see fit. . . .'" Hibbard, 623 S.E.2d at 790 (quoting Hall v. Sinclair Refining Co., 89 S.E.2d 396, 397-98 (N.C. 1955)).

None of these exceptions apply to the provisions at issue. The allegations in the Amended Counterclaim do not support a finding of inequality in bargaining power that would warrant the Court nullifying the contract entered into between the parties. These were investment properties; Defendants purchased undeveloped lots with the intention of selling them for a profit prior to the expiration of the loans' term. Defendants were not forced to buy these lots as an investment, much less at any particular price, and could have chosen not to buy a lot at all. See Hibbard, 623

S.E.2d at 790 ("Defendants were not forced to lease this particular space."); <u>Andrews</u>, 823 F. Supp. at 378 ("The investor-plaintiffs were free to have made other investment decisions or to have elected not to invest at all."). And nothing prevented Defendants from engaging their own advisors to assist in valuing the property or making a decision whether to invest in a lot at River Rock.

Moreover, under the facts of this case as alleged in the Amended Counterclaims, financing the purchase of an undeveloped lot as a speculative investment property does not amount to the type of substantial public interest found by North Carolina courts to warrant the invalidation of an otherwise valid contractual provision. The contracts between the Defendants and Synovus Bank do "not create a risk of injury to the public or the rights of third parties." <u>Hibbard</u>, 623 S.E.2d at 790. This is not a case where if Defendants refused to sign the documents in question they would lose their primary residence or be kicked out of their home. The waivers at issue were contained in documents associated with financing or re-financing the purchase of an undeveloped lot that Defendants purchased with the intention of selling for a profit prior to the expiration of the loans' terms. Defendants have not provided the Court with any legal authority suggesting that North Carolina courts would invalidate such a contract based on the public policy exception. Accordingly, the Court **RECOMMENDS** that the District Court **GRANTS** the Motion to Dismiss as

to Defendants Tracy, Abatemarco, and Karp.

## IV.     Conclusion

The Court **RECOMMENDS** that the District Court **GRANT in part** and **DENY in part** the Motion to Dismiss [# 31].  The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss as to Defendants Tracy, Abatemarco, and Karp, as well as the ILSA counterclaims and the negligent misrepresentation counterclaim as to all Defendants.  The Court **RECOMMENDS** that the District Court **DENY** the motion to dismiss as to the fraud and unfair and deceptive trade practices counterclaims.

Signed: October 5, 2011

Dennis L. Howell
United States Magistrate Judge

## <u>Time for Objections</u>

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such

objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).