# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:10cv172

| | | |
|---|---|---|
| SYNOVUS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 1:10cv172 |
| | ) | |
| JAMES G. KARP, G. DANIEL SIEGEL, and THE KARP FAMILY LIMITED PARTNERSHIP, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| SYNOVUS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 1:10cv201 |
| | ) | |
| BARRON S. WALL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| SYNOVUS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 1:10cv202 |
| | ) | |
| KEVIN J. TRACY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

| | | |
|---|---|---|
| NATIONAL BANK OF SOUTH CAROLINA, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil No. 1:10cv215 |
| ANTHONY J. BARBIERI, | ) ) | |
| Defendant. | ) ) | |
| NATIONAL BANK OF SOUTH CAROLINA, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil No. 1:10cv217 |
| 3GMA REALTY, LLC, and GERALD ABATEMARCO, | ) ) ) | |
| Defendants. | ) ) | |
| SYNOVUS BANK, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil No. 1:10cv218 |
| GREGORY S. KEARY, | ) ) | |
| Defendant. | ) ) | |

| | | |
|---|---|---|
| NATIONAL BANK OF SOUTH CAROLINA, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil No. 1:10cv220 |
| BENJAMIN W. ATKINSON and DANIEL S. HINKSON, | ) ) ) | |
| Defendants. | ) ) ) | |
| NATIONAL BANK OF SOUTH CAROLINA, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil No. 1:10cv221 |
| KATHERINE H. WILLIAMS, | ) ) | |
| Defendant. | ) ) | |
| SYNOVUS BANK, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil No. 1:10cv231 |
| PATRICIA M. TRACY, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OF DECISION AND ORDER

**THIS MATTER** is before the Court on the Plaintiff Synovus Bank's Motion to Dismiss [Doc. 31]; the Magistrate Judge's Memorandum and Recommendation regarding the disposition of such motion [Doc. 36]; and the Plaintiff's and Defendants' Objections to the Memorandum and Recommendation [Docs. 41, 43].

## I.     PROCEDURAL BACKGROUND

This case has its origin in a series of collection actions brought by the Plaintiff Synovus Bank, the successor in interest through name change and by merger with The National Bank of South Carolina ("NBSC") ("Synovus Bank" or "Bank"), against the Defendants James G. Karp, G. Daniel Siegel, and the Karp Family Limited Partnership (the "Karp Defendants"); Barron S. Wall; Kevin J. Tracy; Anthony J. Barbieri; Gerald Abatemarco and 3GMA Realty, LLC (the "Abatemarco Defendants"); Gregory S. Keary; Daniel S. Hinkson and Benjamin W. Atkinson (the "Hinkson Defendants"); Katherine H. Williams; and Patricia M. Tracy (collectively, the "Defendants") in the Buncombe County General Court of Justice, Superior Court Division.  In its collection actions, the Plaintiff seeks the recovery of money it contends that the Defendants owe pursuant to various loan agreements the Defendants

executed in order to finance the purchase of undeveloped lots in a real estate development in Cashiers, North Carolina, known as the River Rock subdivision ("River Rock").  The Defendants subsequently removed each of these collection actions to this Court.

Following the removal of these actions, the Defendants filed Answers and asserted Counterclaims against the Plaintiff.  On December 10, 2010, the Magistrate Judge consolidated these cases for all pretrial proceedings and allowed the Defendants one final opportunity to amend their Answers and assert viable Counterclaims.  [Doc. 20].  The Court also directed Synovus Bank to file a consolidated motion to dismiss the Counterclaims and for the Defendants to file a consolidated response.  [Id.].

Consistent with the Court's Order, several of the Defendants filed Amended Counterclaims.[1]  Although these Counterclaims are based on the same general set of facts, the specific factual allegations and claims vary by each Defendant.   For example, the Karp Defendants, the Hinkson Defendants, and Defendants Wall, Barbieri, K. Tracy, and Williams assert claims for violation of the North Carolina Unfair and Deceptive Trade Practices

_____

[1]Defendants Kevin Tracy, Keary, and Williams did not file further Amended Counterclaims and instead rely on the Amended Counterclaims previously filed in their respective individual actions.  Accordingly, any citations to these Amended Counterclaims will include a reference to those cases' individual case numbers.

Act, N.C. Gen. Stat. § 75-1.1, *et seq.* ("Chapter 75"); fraud and fraud in the inducement; violation of the North Carolina Mortgage Lending Act, N.C. Gen. Stat. § 53-243.11; negligent misrepresentation; and violation of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701, *et seq.* ("ILSA"). [Karp Am. Counterclaim, Doc. 12; Barbieri Am. Counterclaim, Doc. 26; Hinkson Am. Counterclaim, Doc. 27; Wall Am. Counterclaim, Doc. 30; see also K. Tracy Am. Counterclaim, Case No. 1:10cv202, Doc. 13 and Williams Am. Counterclaim, Case No. 1:10cv221, Doc. 13]. The Abatemarco Defendants and Defendants Keary and Patricia Tracy, on the other hand, assert only claims for violation of Chapter 75, violation of the North Carolina Mortgage Lending Act, negligent misrepresentation, and violation of the ILSA. [Abatemarco Am. Counterclaim, Doc. 28; P. Tracy Am. Counterclaim, Doc. 29; see also Keary Am. Counterclaim, Case No. 1:10cv218, Doc. 8].

On January 31, 2011, the Bank filed a motion seeking the dismissal of all of the Counterclaims asserted by the Defendants. [Doc. 31]. In support of its motion, the Bank argues that the Defendants' Counterclaims are subject to dismissal because they are not supported by plausible factual allegations and, therefore, fail as a matter of law (the "plausibility argument"); that Defendants' fraud and ILSA claims fail because they are not pled with

sufficient particularity as required by Rule 9 of the Federal Rules of Civil Procedure; that the ILSA claims also fail because Synovus Bank is not an "agent or developer" within the meaning of that Act; that the statements forming the basis of Defendants' fraud claims are expressions of opinion that are not actionable in fraud; that the factual allegations do not support the claims for negligent misrepresentations or unfair and deceptive trade practices; and that the North Carolina Mortgage Lending Act claims fail because that Act has been repealed and in any event does not apply to the loans that the Defendants secured from the Bank. [Doc. 32]. The Bank further contends that the Defendants Patricia Tracy, Gerald Abatemarco, and James Karp each waived any counterclaims and defenses pursuant to releases contained in the documents they executed in association with securing the loans at issue. [Id.].

In response to the Motion to Dismiss, the Defendants oppose the dismissal of their Counterclaims, arguing that these claims were sufficiently pled and state plausible claims for relief. [Doc. 33].[2]

---

[2]The Defendants agree, however, to the dismissal of their counterclaims brought pursuant to the Mortgage Lending Act. [Doc. 34 at 7]. Accordingly, these counterclaims will be dismissed.

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, the Honorable Dennis L. Howell, United States Magistrate Judge, was designated to consider the Plaintiff's Motion to Dismiss and to submit a recommendation for its disposition. On October 5, 2011, the Magistrate Judge entered a Memorandum and Recommendation regarding the Plaintiff's Motion. [Doc. 36]. Specifically, the Magistrate Judge rejected the Plaintiff's plausibility argument, finding that the factual allegations as stated in the Amended Counterclaims were sufficient to plead plausible claims for relief. [Id. at 15]. The Magistrate Judge went on to conclude, however, that the allegations in the Amended Counterclaims were insufficient to demonstrate that Synovus Bank was an agent or developer within the meaning of the ILSA and therefore recommended that these Counterclaims be dismissed. [Id. at 19].

With respect to the Defendants' claims of fraud, the Magistrate Judge concluded that the Defendants had alleged these claims with sufficient particularity and thus recommended that the motion to dismiss be denied as to these Counterclaims. [Id. at 22]. As for the claims of negligent misrepresentation, the Magistrate Judge found that the Defendants had failed to make more than conclusory allegations to support their claim that Synovus

Bank owed the Defendants a duty of care related to the alleged misrepresentations. [Id. at 22-24]. Accordingly, the Magistrate Judge recommended the dismissal of these Counterclaims. [Id.]. With respect to the Defendants' Chapter 75 claims, the Magistrate Judge concluded that the Amended Counterclaims contained sufficient factual allegations to support the Defendants' claims of unfair and deceptive and trade practices by the Bank. Accordingly, the Magistrate Judge recommended that the motion to dismiss the Chapter 75 counterclaims be denied. [Id. at 25-26].

Finally, the Magistrate Judge concluded that Defendants Patricia Tracy, Gerald Abatemarco, and James Karp had waived all counterclaims and defenses to Synovus Bank's claims because the documents they executed in connection with their loans contain various releases and waivers. Accordingly, the Magistrate Judge recommended that all of the Counterclaims asserted by these Defendants be dismissed. [Id. at 26-30].

Both Synovus Bank and the Defendants filed Objections to the Magistrate Judge's Memorandum and Recommendation. Specifically, Synovus Bank objects to the Magistrate Judge's conclusions regarding the plausibility of the Defendants' counterclaims, as well as to the Magistrate Judge's conclusion that the Amended Counterclaims state claims for fraud

and for unfair and deceptive trade practices under Chapter 75. [Doc. 41]. The Defendants object to the Magistrate Judge's recommendation that their ILSA and negligent misrepresentation claims be dismissed. [Doc. 43]. The Defendants further object to the Magistrate Judge's recommendation that all counterclaims asserted by Patricia Tracy, Gerald Abatemarco, and James Karp be dismissed in light of the releases and waivers they executed in their loan documents. [Id.]. Both sides have responded to the other's objections. [Docs. 44, 45].[3]

Having been fully briefed, this matter is now ripe for disposition.

## II.    STANDARD OF REVIEW

### A.    Standard of Review Applicable to Objections to Magistrate Judge's Memorandum and Recommendation

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient

---

[3]Additionally, on January 18, 2012, Synovus Bank filed a Notice of Subsequently Decided Authority [Doc. 46], bringing to the Court's attention the recently decided opinion of the North Carolina Court of Appeals in the case of In re Fifth Third Bank, National Association -- Village of Penland Litigation, 719 S.E.2d 171 (N.C. Ct. App. 2011).

specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

**B.    Rule 12(b)(6) Standard of Review**

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6), the Court is guided by the Supreme Court's instructions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). As the Fourth Circuit has noted, "those decisions require that complaints in civil actions be alleged with greater specificity than previously was required." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

In reviewing the complaint, the Court must accept the truthfulness of all factual allegations but is not required to assume the truth of "bare legal conclusions." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." Walters, 684 F.3d at 439.

To survive a Rule 12(b)(6) motion, "a complaint must state a 'plausible claim for relief.'" Id. (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937). Determining whether a complaint states a plausible claim for relief is "a context-specific task," Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009), which requires the Court to assess whether the factual allegations of the complaint are sufficient "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, 127 S.Ct. 1955. As the Fourth Circuit has recently explained:

> To satisfy this standard, a plaintiff need not forecast evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements. Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the plaintiff's claim across the line from conceivable to plausible.

Walters, 684 F.3d at 439 (citations and internal quotation marks omitted).

## III.    FACTUAL BACKGROUND

Viewing the allegations of the Amended Counterclaims[4] as true, the following is a summary of the relevant facts.

### A.    The Defendants' Purchase of Lots at River Rock

River Rock is a subdivision in Cashiers, North Carolina that originally consisted of approximately 4,000 acres of undeveloped land.  [See e.g., Karp Am. Counterclaim, Doc. 12 at ¶ 7].   Synovus Bank loaned approximately $12.5 million to third party Legasus of North Carolina, LLC ("Legasus") so that Legasus could purchase and develop River Rock.  [Id. at ¶¶ 8-11].  Each of the Defendants entered into a contract with Legasus to purchase a lot at River Rock.  [Id. at ¶ 13].  The purchase price of the lots ranged from $239,900 to

---

[4]Where the factual allegations of the Amended Counterclaims are substantially similar, the Court will cite only to the Amended Counterclaim of the Karp Defendants. Where the allegations vary, the Court will cite to each Amended Counterclaim separately.

$550,000. [See App'x 1 to Motion to Dismiss, Doc. 32-32]. The Defendants financed the purchase of these lots by taking out loans with Synovus Bank for ninety percent of the purchase price of the lot. [Karp Am. Counterclaim, Doc. 12 at ¶38].[5] The terms of the loans provided for interest-only payments for a period ranging from one and one-half years to five years. [Id.; App'x 1 to Motion to Dismiss, Doc. 32-32]. As part of the agreement to purchase the lots, Legasus took the Defendants' down payments for the lots and transferred the money to an account at Synovus Bank. [Karp Am. Counterclaim, Doc. 12 at ¶ 39]. The Defendants then established an automatic payment mechanism so that these funds would cover the interest payments on the loan until the funds were depleted. [Id.].

Synovus Bank hired Marilyn Woods of Woods Appraisal Service to conduct the appraisal of the lots in connection with the loans. [Id. at ¶ 32]. Michael Wolf, a loan officer with Synovus Bank, hired Woods because he believed that she would provide an inflated value of the lots. [Id. at ¶ 33]. The Defendants allege that Woods did in fact provide inflated appraisals to Synovus Bank. [See id. at ¶¶ 33-34, 36]. Specifically, the Defendants allege

---

[5]The one exception is Defendant Hinkson, who financed ninety-five percent of the lot's purchase price. [Hinkson Am. Counterclaim, Doc. 27 at ¶ 22; App'x 1 to Motion to Dismiss, Doc. 32-32].

that Woods failed to consider lots outside of River Rock as comparables and failed to take into account the lack of adequate infrastructure and utilities in the River Rock development. [Id. at ¶¶ 35-36]. The Defendants also allege that Synovus Bank knew that these appraisals were inflated but used them to support the loans it provided the Defendants to purchase the lots. [Id. at ¶ 36]. Additionally, some of the Defendants contend that Synovus Bank failed to provide them with a copy of the appraisal prior to the closing date of the lots. [See e.g., Wall Am. Counterclaim, Doc. 30 at ¶¶ 41-43].

## B. The Alleged Misrepresentations

In connection with the purchases of the lots, the Defendants allege that Synovus Bank employee Michael Wolf ("Wolf") made various misrepresentations regarding the value of the lots and the viability of River Rock development in general. These representations include statements by Wolf that the lots were "an incredible investment" [Karp Am. Counterclaim, Doc. 12 at ¶ 24] and "a good investment" [K. Tracy Am. Counterclaim, Case No. 1:10cv202, Doc. 13 at ¶ 19]; that Defendant Barbieri "would make money" on the lot [Barbieri Am. Counterclaim, Doc. 26 at ¶ 22]; that River Rock was "a viable development" [Williams Am. Counterclaim, Case No. 1:1cv221, Doc. 13 at ¶ 30]; that future buyers would be attracted to the fact that professional

golfer Phil Mickelson had agreed to "do a golf course at River Rock" [Id. at ¶ 31]; and that Defendants would be able to sell or re-finance the lots before the money set aside by Legasus to pay the initial eighteen months of interest on the loan was depleted or prior to the expiration of the interest-only portion of the loan [Karp Am. Counterclaim, Doc. 12 at ¶ 27; K. Tracy Am. Counterclaim, Case No. 1:10cv202, Doc. 13 at ¶ 24; Barbieri Am. Counterclaim, Doc. 26 at ¶ 21; Keary Am. Counterclaim, Case No. 1:10cv218, Doc. 8 at ¶ 27].

### C.    The Alleged Scheme to Defraud the Defendants

Although the specific factual allegations related to the alleged fraudulent scheme vary somewhat in each of the Amended Counterclaims, the general nature of the alleged scheme is as follows.  The Defendants allege that Synovus Bank fraudulently induced them to purchase lots at River Rock at an inflated price by structuring the loan so that the funds they used for the down payment on the lot were used to pay the interest payments on the loan during approximately the first eighteen months.  [Karp. Am. Counterclaim, Doc. 12 at ¶ 39].  Synovus Bank was able to inflate the price of the lot by using false appraisals from Woods.  [Id. at ¶ 36].  Synovus Bank knew that this practice was not sustainable in the long term but, nonetheless, persisted with its plan. [Id. at ¶ 40].  In spite of knowing that this was not a sustainable business

practice, the Bank participated in a scheme designed to inflate the prices of the lots and issue loans to the Defendants on property that it knew was worth only a fraction of the loans' value in order to maximize Synovus Bank's short-term financial growth. [Wall Am. Counterclaim, Doc. 30 at ¶ 65]. Accordingly, Synovus Bank made loans that it knew posed a high level of long-term risk "because it was attempting to grow rapidly by making loans that were of low quality and charging borrowers a premium yield." [Id. at ¶ 66]. The Bank received guaranteed interest payments from Legasus at closing to bolster its short-term growth. [Id. at ¶¶ 53, 58-59]. In total, Synovus Bank received approximately one million dollars over a two-year period from the transfer of seller-paid interest from Legasus to Synovus Bank upon the closing of approximately thirty loans tied to the purchase of lots at River Rock. [Id. at ¶¶ 62-63]. The Bank also received a small loan origination fee. [Id. at ¶¶ 54, 61].

In short, the Defendants contend that Synovus Bank undertook the risk associated with lending money to unqualified individuals to purchase property that Synovus Bank knew was overvalued and, in some cases, knew that the individuals would not be able to make payments on these loans once the interest-only period ended, in order to stimulate short-term revenue. [See Karp. Am. Counterclaim, Doc. 12 at ¶ 26, 31, 36, 40; Barbieri Am.

Counterclaim, Doc. 26 at ¶ 21]. The Defendants allege that the Bank disregarded the "substantial long term risk" to its business from this practice in order to create a short-term appearance of profitability on its financial statements. [K. Tracy Am. Counterclaim, Case No. 1:10cv202, Doc. 13 at ¶¶ 45, 48, 49]. This scheme came to a halt after the collapse of the real estate market in 2008. [Wall Am. Counterclaim, Doc. 30 at ¶¶ 74-79].

IV. **ANALYSIS**

A. **Plausibility of Defendants' Counterclaims**

Synovus Bank objects to the Magistrate Judge's conclusion that the Defendants' claims are sufficiently plausible to withstand scrutiny under Twombly and Iqbal. Specifically, the Bank argues that the underlying theory of the Defendants' Counterclaims is so contrary to the Bank's long-term business interests as to be implausible as a matter of law. [Doc. 41 at 5-12].

In support of this argument, the Bank relies on three district court decisions, Feeley v. Total Realty Management, 660 F.Supp.2d 700 (E.D. Va. 2009), Goldstein v. Bank of America, No. 1:09cv329, 2010 WL 1252641 (W.D.N.C. Jan. 10, 2010) (Howell, M.J.), and Bank of America v. Lykes, No. 1:09cv435, 2010 WL 2640454 (W.D.N.C. May 20, 2010) (Howell, M.J.). In each of these cases, however, the court determined that the plaintiffs had

failed to allege specific facts to support their claims and had failed to make plausible allegations to support the theory that a lender would be willing to collude or conspire with a developer to make under-collateralized loans to borrowers to the detriment of the lender's own financial interests. See Feeley, 660 F.Supp.2d at 708; Goldstein, 2010 WL 1252641, at *5; Lykes, 2010 WL 2640454, at *6. By contrast, in the present case, the Defendants' allegations, when assumed to be true, establish a plausible reason (i.e., the desire for short-term profitability) for the Bank's willingness to knowingly make under-collateralized loans to the Defendants, even if such loans may have been, as argued by the Bank, contrary to the Bank's long-term financial interests. Further, the Defendants have pled sufficient factual allegations detailing the basis of their claims against the Bank. As such, Feeley, Goldstein, and Lykes are distinguishable from the present case.

As the events of the recent economic crisis have demonstrated, financial institutions do not always make the most prudent business decisions, and they sometimes may accept what would otherwise appear to be unreasonable economic risks for the sake of immediate, short-term profitability. Thus, while the Bank's conduct, as alleged by the Defendants, may not appear to have been the most prudent course of action for the Bank to take in terms of its

long-term business interests, that certainly does not mean that such conduct is not plausible as a matter of law.[6]  Indeed, as the Magistrate Judge correctly noted, assuming the truth of the Defendants' Counterclaims, "Synovus Bank would not be the first corporation in the history of modern economics to undertake an action that carried substantial risk to its long term financial viability in order to increase short term profits or revenue."  [Doc. 36 at 14]. Construing the well-pled factual allegations of the Counterclaims in the light most favorable to the Defendants, the Court concludes that the Defendants have pled sufficient factual allegations in the Amended Counterclaims to state claims that are plausible on their face.  For these reasons, the Bank's first objection is overruled, and the Motion to Dismiss the Defendants' Counterclaims as implausible is denied.

## B.    Fraud Claims

The Bank objects to the Magistrate Judge's conclusion that the Amended Counterclaims set forth valid claims for fraud and are therefore not subject to dismissal pursuant to Rule 12(b)(6).  Specifically, the Bank argues

---

[6]In essence, the Bank's argument appears to be that if the theory of recovery underlying the claim is *unlikely*, the claim is subject to dismissal on the basis of implausibility.  Such an argument, however, reads too much into the Iqbal standard. Iqbal does not require the Court to determine the *likelihood* of the facts alleged but rather to determine whether the factual allegations pled in support of that claim are *sufficient* to render the claim *plausible*.

that these claims have not been pled with the requisite specificity, and that the representations are nothing more than statements of opinions and are therefore not actionable.  [Doc. 41 at 12-14].

In order to state a valid claim for fraud under North Carolina law, a party must allege a false representation or concealment of a material fact that: (1) was reasonably calculated to deceive; (2) was made with the intent to deceive; (3) did in fact deceive the plaintiff; and (4) resulted in damages to the party.  Anderson v. Sara Lee Corp., 508 F.3d 181, 189 (4th Cir. 2007). Additionally, the party must demonstrate any reliance on the false representations was reasonable.  See id.

Where a party's allegations sound in fraud, the allegations must satisfy the heightened pleading standards of Rule 9 of the Federal Rules of Civil Procedure.  Cozzarelli v. Inspire Pharmaceuticals Inc., 549 F.3d 618, 629 (4th Cir. 2008).  Rule 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Rule 9 applies not only to claims asserting common law fraud, but to all claims where the allegations have the substance of fraud.  Cozzarelli, 549 F.3d at 629.  A claim is subject to

dismissal under Rule 12(b)(6) for failure to state a claim if it does not comply with Rule 9(b).  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir.1999).

Here, a review of each of the Defendants' Amended Counterclaims reveals that the Defendants have alleged the general time, place and content of each alleged fraudulent statement, while also identifying the person who made each statement and the recipient of each statement.  These allegations are sufficient to comport with the requirements of Rule 9(b) and thus the Magistrate Judge correctly concluded that the Defendants have stated claims for fraud.  The Bank's contention that the Defendants failed to plead their fraud counterclaims with sufficient particularity is, therefore, rejected.

The Bank further contends that the Defendants' fraud counterclaims must be dismissed to the extent that they are premised upon mere expressions of opinion. "A representation which is nothing more than an opinion as to the value of property, absent something more, does not constitute actionable fraud."  Hall v. T.L. Kemp Jewelry, Inc., 71 N.C. App. 101, 106, 322 S.E.2d 7, 11 (1984).  While the Bank discounts the Defendants' fraud claims as merely relying on statements of opinions expressed by Bank employee Michael Wolf, a review of the Defendants' allegations reveals that

at least some of the misrepresentations alleged were more than mere statements of opinion. For example, the Karp Defendants alleged that Wolf told them that "even after commission and costs, the Defendants would make a profit because they were buying Phase I inventory at Phase I pricing, which had built in appreciation of ten percent over Phase II lots" and that, because the Phase II lots had to "be sold by Legasus salespersons at set prices as determined by Legasus," the Defendants as independent owners "could decide to sell their Lot at pricing below the Phase II pricing and still at least break even on their investment." [Karp Am. Counterclaim, Doc. 12 at ¶ 28]. The statements that the Defendants were buying "Phase I inventory at Phase I pricing" and that "Phase II lots must be sold by Legasus salespersons at set prices as determined by Legasus" are clearly statements based upon then existing facts, not statements based upon opinion or predictions of future actions or outcomes. Likewise, the statement that the Phase II lots had to be sold by Legasus salespersons at set prices is a statement of fact based upon Legasus policy (i.e., an established requirement) and is not an opinion.

Admittedly, some of the misrepresentations that were alleged to have been made amount to nothing more than statements of opinion by Wolf. For example, Defendant Williams alleges that in December of 2006, Wolf stated

that he "felt good" about the River Rock development [Williams Am. Counterclaim, Case No. 1:10cv221, Doc. 13 at ¶ 19], and Defendant Barbieri alleges that Wolf stated that Barbieri "would make money" if he bought the lot because it was in the first tract of land that would be subdivided at River Rock and therefore "he would be able to get a building permit" on his lot before lots in other phases of River Rock, which would "make his lot more valuable and easier to sell." [Barbieri Am. Counterclaim, Doc. 26 at ¶ 22]. Even though such statements are merely expressions of opinion, as the Magistrate Judge correctly recognized, "a statement purporting to be opinion may be the basis for fraud if, at the time it is made, the maker of the statement holds an opinion contrary to the opinion he or she expresses, and the maker also intends to deceive the listener." Leftwitch v. Gaines, 134 N.C. App. 502, 509-10, 521 S.E.2d 717, 723, disc. rev. denied, 351 N.C. 357, 541 S.E.2d 713 (1999). The Defendants have alleged that Wolf made such statements to the Defendants knowing the same to be false and with the intent to deceive the Defendants. [See Karp Am. Counterclaim, Doc. 12 at ¶¶ 58-60; Barbieri Am. Counterclaim, Doc. 26 at ¶¶ 101-02; Hinkson Am. Counterclaim, Doc. 27 at ¶¶ 115-17; Wall Am. Counterclaim, Doc. 30 at ¶¶ 110-12; K. Tracy Am. Counterclaim, No. 1:10cv202, Doc. 13 at ¶¶ 83-85; Williams Am. Counterclaim, Case No.

1:10cv221, Doc. 13 at ¶ 97-99].  Thus, even if some of Wolf's representations were expressions of opinion, the Defendants have still stated an adequate basis for their fraud claims to survive a Rule 12(b)(6) motion.[7]

For these reasons, the Bank's objections are overruled, and the Motion to Dismiss the Defendants' fraud counterclaims is denied.

## C.    Chapter 75 Claims

The Bank further objects to the Magistrate Judge's recommendation that the Motion to Dismiss be denied as to the Defendants' Chapter 75 claims. [Doc. 41 at 14-16].

To state a claim for unfair and deceptive trade practices under Chapter 75, a party must allege sufficient facts to show "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." Spartan Leasing, Inc v. Pollard, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991).  A deceptive practice is one that has "the capacity or tendency to deceive the average consumer, but proof of actual deception is not required." Id. at 461, 400 S.E.2d at 482.

---

[7]Of course, it remains to be seen whether the Defendants will be able to present a forecast of evidence sufficient for all of their fraud claims to survive a summary judgment challenge.

The Bank argues that to the extent that the Defendants' claims are based on allegations related to false appraisals, such allegations should not be considered because these appraisals were conducted for the benefit of the Bank and not the Defendants, and thus it was not reasonable for the Defendants to rely upon them. Even if such appraisals do not support the Defendants' Chapter 75 claims, however, the Amended Counterclaims contain numerous other allegations of what would constitute unfair and deceptive trade practices, such as false representations regarding the value of the lots, the status of the development at River Rock, and the ability of the Defendants to sell their lots prior to the expiration of the loan term. As the Magistrate Judge correctly recognized, each of these statements had the "capacity to mislead" the Defendants and can thus constitute unfair and deceptive trade practices. Moreover, "[p]roof of fraud necessarily constitutes a violation of the prohibition against unfair and deceptive acts." Winston Realty Co. v. G.H.G., Inc., 314 N.C. 90, 97, 331 S.E.2d 677, 681 (1985). Because the Court has concluded that the Defendants have stated plausible fraud claims with enough particularity to survive the Plaintiff's Motion to Dismiss, the Court likewise will deny the Motion to Dismiss with respect to the Chapter 75 claims. The Bank's objection, therefore, is overruled.

**D.     ILSA Claims**

The Defendants object to the Magistrate Judge's recommendation that their claims under the ILSA be dismissed, arguing that their allegations are sufficient to establish that Synovus Bank was a "developer" or "agent of the developer" within the meaning of the ILSA.  [Doc. 43 at 6-10].

The ILSA "is designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers."  Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla., 426 U.S. 776, 778, 96 S.Ct. 2430, 2433, 49 L.Ed.2d 205 (1976).  "The Act also requires sellers to inform buyers, prior to purchase, of facts which would enable a reasonably prudent individual to make an informed decision about purchasing a piece of real property."  Burns v. Duplin Land Dev., Inc., 621 F.Supp.2d 292, 301 (E.D.N.C. 2009).

An individual who purchases a lot may bring a civil action under the ILSA against a "developer or agent" who violates Section 1703(a). 15 U.S.C. § 1709; see also Burns, 621 F.Supp.2d at 301.  A "developer" is defined as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision . . . ." 15 U.S.C. § 1701(5).  An "agent" is defined as "any person who represents, or acts for or

on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision. . . ." 15 U.S.C. § 1701(6).

As the Magistrate Judge correctly noted [Doc. 36 at 17], a lending institution acting in the ordinary course of its business is generally not considered a "developer" within the meaning of the ILSA. <u>See</u> <u>Cumberland Cap. Corp. v. Harris</u>, 621 F.2d 246, 251 (6th Cir. 1980); <u>Kenneally v. Bank of Nova Scotia</u>, 711 F.Supp.2d 1174, 1191-92 (S.D. Cal. 2010) (collecting cases); <u>Hammar v. Cost Control Mktg. and Sales Mgmt. of Va., Inc.</u>, 757 F.Supp. 698, 702 (W.D. Va. 1990). "It is only where a financial institution acts beyond its ordinary course of dealing as a lending institution and participates in the actual development, marketing or sale of property that liability may arise under ILSA." <u>Thompson v. Bank of Am.</u>, No. 7:09-CV-89-H, 2011 WL 1253163, at *1 (E.D.N.C. Mar. 30, 2011) (citations omitted). While the Defendants have asserted that Synovus Bank was a developer or agent within the meaning of the ILSA, they have failed to allege sufficient facts to support such a finding. The Defendants' factual allegations, when separated from their conclusory statements, claim that Wolf appeared at off-site sales events, made statements regarding the quality of the lots as investments, and made one statement that the Bank was one of the major funders of the

development. They do not allege, however, that the Bank had authority to sell lots or that it actually did sell any lots to Defendants. At best, the factual allegations set forth in the Amended Counterclaims state that Wolf was at the off-site event only to speak to potential buyers about obtaining financing for the purchase of a lot. The Defendants' attempt in their Response brief to re-characterize their allegations is of no effect. [See Doc. 43 at 7 ("of course, the only purpose of this event was to sell lots in River Rock")]. Further, Wolf's alleged statements regarding the value of the lots and that the Bank was one of the major funders of the project cannot fairly be said to demonstrate that the Bank participated in the development to such a degree that it went beyond its ordinary position as a lender and should now be considered a "developer" for the purposes of the ILSA. Further, unlike the plaintiffs in Hammar v. Cost Control Marketing & Sales Management Inc., 757 F. Supp. 698, 702-03 (W.D. Va. 1990), a case on which the Defendants rely, the Defendants have not produced advertising material suggesting the Bank may be an "affiliate" of the Developer. As the Magistrate Judge correctly concluded, the Defendants have failed to allege facts sufficient to make out a claim based on the Bank having stepped outside of the ordinary course of its business as a lender such

that liability could be imposed under the ILSA. Accordingly, the Defendants'

objection is overruled, and the Defendants' ILSA claims are dismissed.

### E.    Negligent Misrepresentation Claims

The Defendants object to the Magistrate Judge's recommendation that

their claims for negligent misrepresentation be dismissed, arguing that they

have alleged sufficient facts to support their contention that the Bank

undertook a duty of care to the Defendant when its employees chose to make

statements regarding the quality of the Defendants' investments in River

Rock.  [Doc. 43 at 10-13].  The Defendants' argument, however, is without

merit.

A bank owes a borrower only those duties that are specified in the loan

agreement.  See Camp v. Leonard, 133 N.C. App. 554, 560, 515 S.E.2d 909,

913 (1999) ("a lender is only obligated to perform those duties expressly

provided for in the loan agreement to which it is a party").  The Defendants

have not identified any cases construing North Carolina law that recognize an

extra-contractual duty arises simply because misrepresentations are made

before loan agreements are executed.  At least one case in which prior

representations were apparently made, Branch Banking & Trust Company v.

Thompson, did not mention such a distinction.  See 107 N.C. App. 53, 61, 418

S.E.2d 694, 699 (noting misrepresentation by BB&T officers prior to execution of loan documents but concluding that "[t]he record does not reveal any facts suggesting that the [defendants] reposed any sort of special confidence in BB&T which would serve to give rise to a fiduciary relationship."), disc. rev. denied, 332 N.C. 482, 421 S.E.2d 350 (1992).

Here, the Magistrate Judge correctly concluded that the Defendants' allegations do not support a finding of any type of special relationship between Synovus Bank and the Defendants beyond that of the typical lender-borrower relationship. [Doc. 36 at 24]. Accordingly, the Defendants' objection is overruled, and the Defendants' negligent misrepresentation claims are dismissed.

### F. Waiver by Defendants P. Tracy, Abatemarco, and Karp

Finally, the Defendants object to the Magistrate Judge's conclusion that Defendants Patricia M. Tracy, Gerald M. Abatemarco, and James G. Karp waived any counterclaims and defenses through releases executed in their loan documents. [Doc. 43 at 13-16]. Specifically, the Defendants contend that the releases are unenforceable pursuant to public policy. [Id.].

North Carolina courts have recognized that "an exculpatory contract will be enforced unless it violates a statute, is gained through inequality of

bargaining power, or is contrary to a substantial public interest." <u>Fortson v. McClellan</u>, 131 N.C. App. 635, 636, 508 S.E.2d 549, 551 (1998). The Court agrees with the Magistrate Judge's assessment that the Defendants' characterization of the public interest implicated by this case is overly expansive. The Court declines to interpret the public policy of North Carolina so broadly as to prohibit the enforcement of an exculpatory clause provision executed in the midst of a voluntary and arms-length transaction to procure financing for an investment property. <u>See</u> <u>Andrews v. Fitzgerald</u>, 823 F.Supp. 356, 378 (M.D.N.C. 1993) (noting that North Carolina courts have found a "substantial public interest" present only with waivers of liability for physical injury). Furthermore, the "unequal bargaining power" claimed by these Defendants is lacking. These Defendants "were free to have made other investment decisions or to have elected not to invest at all" in their Lots, and they have failed to establish that they were unable to obtain financing from other lenders. <u>Id.</u>

As the Magistrate Judge correctly noted, the Defendants "have not provided the Court with any legal authority suggesting that North Carolina courts would invalidate such a contract based on the public policy exception." [Doc. 36 at 29]. The Defendants still have not done so. Accordingly, the

Defendants' objection is overruled, and all counterclaims of Patricia Tracy, Gerald Abatemarco, and James Karp are hereby dismissed.

## V. CONCLUSION

Having conducted a *de novo* review of those portions of the Memorandum and Recommendation to which objections were filed, the Court concludes that the Magistrate Judge's proposed conclusions of law are supported by and are consistent with current case law.

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Objections to the Memorandum and Recommendation of the Magistrate Judge [Doc. 41] is **OVERRULED**; the Defendants' Objections [Doc. 43] are **OVERRULED**; and the recommendation of the Magistrate Judge [Doc. 36] is **ACCEPTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Dismiss [Doc. 31] is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) The Motion to Dismiss is **GRANTED** with respect to the Counterclaims asserted by Defendants Patricia Tracy, Gerald Abatemarco, and James Karp, and these Counterclaims are hereby **DISMISSED**;

(2)    The Motion to Dismiss is further **GRANTED** with respect to
all of the Defendants' Counterclaims arising under the ILSA
and the North Carolina Mortgage Lending Act and for
negligent misrepresentation, and these claims are hereby
**DISMISSED**;

(3)    The Motion to Dismiss is **DENIED** with respect to the
Counterclaims for fraud and unfair and deceptive trade
practices asserted by Defendants G. Daniel Siegel, The
Karp Family Limited Partnership, Barron S. Wall, Kevin J.
Tracy, Anthony J. Barbieri, 3GMA Realty, LLC, Gregory S.
Keary, Benjamin W. Atkinson, Daniel S. Hinkson, and
Katherine H. Williams.

**IT IS FURTHER ORDERED** that the parties shall conduct an initial
attorneys' conference within fourteen (14) days of the entry of this Order and
shall file a Certificate of Initial Attorneys' Conference within seven (7) days
thereafter.

**IT IS SO ORDERED.**

Signed: August 15, 2012

Martin Reidinger
United States District Judge